IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DENNIS DEAN FOREMAN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION No. H-14-2442 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

State inmate Dennis Dean Foreman, proceeding *pro se*, filed a section 2254 habeas petition challenging his conviction and life sentence for aggravated assault of a family member. Respondent filed a motion for summary judgment (Docket Entry No. 11), to which petitioner filed a response (Docket Entry No. 15).

Based on consideration of the motion, the response, the record, and the applicable law, the Court **GRANTS** respondent's motion for summary judgment and **DISMISSES** this case for the reasons that follow.

**I. PROCEDURAL BACKGROUND**

Petitioner was convicted of aggravated assault of a family member and sentenced to life imprisonment on December 10, 2010. The conviction was affirmed on appeal, *Foreman v. State*, No. 01-10-01104-CR, 2013 WL 485767 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd), and the Texas Court of Criminal Appeals refused discretionary review. Petitioner's

application for state habeas relief, filed on February 16, 2014, was denied by the Texas Court of Criminal Appeals on July 9, 2014.

Petitioner raises the following claims for federal habeas relief in the instant petition:

1. Section 22.02(b)(1) of the Texas Penal Code violated his double jeopardy and due process protections.

2. The jury charge violated his double jeopardy protections.

3. The State withheld impeachment and mitigating evidence.

4. The use of extraneous offense evidence during punishment was an *ex post facto* violation.

Respondent argues that these claims are without merit and should be dismissed.

## II. FACTUAL BACKGROUND

Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that the record presented no reversible error and that therefore the appeal was frivolous. *Foreman*, 2013 WL 485767, at *1. Petitioner filed a *pro se* response to the brief, raising various issues that were overruled by the intermediate state court of appeals. *Id.*, at *1–2.

No statement of facts appears in the opinion affirming petitioner's conviction. Appellate counsel set forth the following statement of facts in his brief on appeal:

> Appellant was charged by indictment with intentionally, knowingly and recklessly causing serious bodily injury to Laura Foreman, his wife, with the use of a deadly weapon on November 29, 2009.

At trial the state introduced the tape of a 911 call that Appellant had made immediately after the shooting. In the tape Appellant stated that he had lost control and shot his wife.

Sergeant Michael LeCompte of the Harris County Sheriff's Department testified that he was dispatched to a shooting call at 702 Windsor Locks on November 29, 2009. He approached the front door, which was closed, opened it and at that time observed Appellant with phone in his hand. He instructed Appellant to come outside.

Appellant was then handcuffed and detained. LeCompte also observed a shotgun lying in the entryway. He and Deputy Hart entered the house to look for the victim and heard screams from a back bedroom where they located the complainant lying on the floor bleeding from her abdominal area. They notified EMS and a Life [Flight] helicopter transported the complainant to the hospital.

Deputy Chris Meyers testified that he was dispatched to the residence around 7:30 p.m. When they opened the door he observed Appellant with his hands in the air. He obtained a consent to search from Appellant. He found the complainant and asked her who had shot her. She answered that it was Appellant.

Deputy William Hart testified that he arrived at the Windsor Locks location and covered the door as the other officers entered. He did a security check of the premises and found the complainant lying on the floor in a bedroom, crying and moaning. She told him that Appellant had shot her. Deputy Lionel Holliday, a crime scene investigator, testified that he took photos of the crime scene and collected evidence. He found a fired shotgun shell on top of a bed and a document that purported to be a last will and testament. He also collected the complainant's clothes from the hospital.

Robert Baldwin, a sheriff's department firearms examiner, testified that he tested the recovered shotgun and it functioned normally.

Dr. Rondel Alvarado, a trauma surgeon at Memorial Hermann Hospital, testified that he was on duty on November 29th when he was notified that the complainant was being brought in. She had a large gunshot wound to the abdomen and was unconscious, having lost almost all of her blood volume. He performed surgery and estimated at that time that the complainant only had

a 5% chance of survival. Nevertheless he was able to save her life. The complainant was confined to the hospital for three months and had eight major operations. She suffered the loss of her abdominal wall and the majority of her bowels and faced severe complications as well. In his opinion she had suffered serious bodily injury.

Laura White (formerly Foreman), the complainant, testified that she first met Appellant at a divorce recovery class and started dating him in 2003. They married in 2007. The marriage was troubled, as there were occasions of verbal abuse and Appellant was jealous of her relationship with her children. Appellant was suspicious and would accuse her of cheating with other men. In October of 2009 she informed Appellant that she wanted a divorce. She moved out of the house and Appellant was angry and disappointed. On October 16, he changed his will, leaving everything to his son.

She filed for divorce on October 22. For some time afterward she entertained hopes of possibly reconciling and delayed the divorce proceedings. She met Appellant at a meeting of Overeaters Anonymous and they agreed to meet on Saturday, November 8. She brought some steaks to Appellant's house and grilled them. The two ate lunch and then had sex. The complainant gave Appellant the finalized divorce papers at an OA meeting in the middle of November and he became very angry and accused her of having a boyfriend. She lied and told that that was in fact the case. Appellant called her that night and requested she come to his house. She agreed but the meeting did not go well and she left.

She talked to Appellant on the phone on Thanksgiving day for a couple of hours. Appellant called her on the evening of November 28 and begged her to come to his house. She declined but agreed to meet him the next day. She went to his house on Saturday and they played golf together. They picked up some food on the way home and Appellant suggested that they take their clothes off and eat the meal in bed. They did so and she and Appellant had sex afterward. When they finished she began to get dressed while Appellant went to another room. She had just finished dressing and was sitting on the bed when Appellant returned, pulled out a shotgun, chambered a round and pointed it at her. As she sat back down on the bed, Appellant said that he was going to kill her and then himself. Appellant told her that if he couldn't have her nobody else would. She asked him to put the gun down but Appellant told her that he had been planning it for a couple of weeks and began cursing her. She jumped up to run and Appellant jumped back and shot her in the abdomen.

4

She fell to the floor in intense pain. Appellant was standing over her still pointing the shotgun. She asked him to call 911 but Appellant told her that they would be unable to save her and that she was going to die. Appellant then went into another room and pretended to call emergency personnel but returned and stated that he had not in fact called. Appellant finally relented and did call 911. Police and EMS arrived and took her to the hospital.

Jason Brown, a Sheriff's Department homicide investigator, testified that he conducted an interview with Appellant after his arrest. In the interview Appellant claimed that the gun had fired when the complainant grabbed it.

Appellant testified in his own defense. He first met the complainant at a church divorce care program. They dated for four or five years and then decided to marry. Appellant admitted that he could be mean and controlling. In the fall of 2009 he and the complainant vacillated as far as actually obtaining a divorce. Appellant also believed that she was seeing other people and she told him that she had had sex with a man she met at Lakewood Church. Prior to November 29th he had been contemplating committing suicide and hurting the complainant as well. On the evening before the shooting she told him that she was going to the movies with her new boyfriend although Appellant begged her to come to his house. At that point Appellant decided to kill her and himself as well. He had made up his mind while they were playing golf. When they were at his house, he pulled out the shotgun but didn't immediately shoot because he could not bring himself to do it. Appellant was confused and disoriented and decided he couldn't go through with it. While he was pointing the gun at her she jumped up and grabbed the gun or knocked it as she went toward the door. The gun went off although at that point he had no desire to shoot her. Appellant then placed the gun next to his face but could not bring himself to commit suicide. At first he did not call 911 because he believed the complainant was going to die. Appellant had no conscious awareness that the gun was being fired. It would not have gone off if the complainant hadn't grabbed it.

At the punishment phase the state called Paula Clay. She testified that she met Appellant in October of 1985 and began dating him. In July of 1988 she decided to end the relationship. She spoke with Appellant on the phone and asked him to leave her alone. On July 8, 1988, she arrived home with her teenage daughter and the daughter's friend. She found Appellant standing in the entryway of her home with a gun. He told her to come inside and raised the gun as if to fire. She pushed him back and the two younger girls were able

5

to flee. Appellant brought her to the back of the house and threatened to kill her. He walked her to his car and they drove away. Appellant held her captive for several days, finally ending up in Oklahoma. During that period of time Appellant raped her three times. He then dropped her off at [the] police station and turned himself in. Clay did not want to prosecute so Appellant pleaded guilty to burglary of a habitation and received a probated sentence.

Appellant presented a number of character witnesses, who testified to the help he had given them while members of Alcoholics Anonymous. Dr. Danielle Hale, a psychologist at the Harris County jail, testified that Appellant was making progress in cognitive behavior therapy.

(Docket Entry No. 12-14, pp. 8–13, record citations omitted).

## III. THE APPLICABLE LEGAL STANDARDS

A. <u>Habeas Review</u>

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal.

*Id.* (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying

factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

B. <u>Summary Judgment</u>

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## IV. DOUBLE JEOPARDY/DUE PROCESS CLAIMS

Petitioner claims that section 22.02(b)(1) of the Texas Penal Code violated his double jeopardy and due process protections because it allowed multiple punishments for the same offense. Specifically, he contends that the statute is unconstitutional "as applied to this case where the person assaulted is legally married to the actor." (Docket Entry No. 1, p. 6.) He further claims that the jury charge in his case, which tracked section 22.02, violated his double jeopardy protections.

Petitioner did not raise these claims in his *pro se* response on direct appeal.[1] He raised the claims on collateral review, but the state trial court found on collateral review that the claims were record claims that should have been raised on direct appeal. *Ex parte Foreman*, pp. 92–94. Accordingly, the issues have been procedurally defaulted and are barred from consideration at this juncture. Petitioner fails to demonstrate good cause and actual prejudice for the default. See *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001); *Nobles v. Johnson*, 127 F.3d 409, 422 (5th Cir. 1997).

---

[1] In affirming petitioner's conviction on appeal, the intermediate state appellate court stated that petitioner raised the following grounds in his *pro se Anders* response:

> In his *pro se* response, Foreman contends that: (1) the trial court erred by not instructing the jury about parole; (2) the court abused its discretion by admitting evidence of extraneous offenses; (3) the prosecutor's jury argument was improper; and (4) his trial counsel was ineffective for failing to file a motion for new trial, failing to object to the admission of extraneous offense evidence, failing to object to the prosecutor's jury argument, and allegedly advising him not to accept a plea bargain for 30 years in prison.

*Foreman*, at *1. The appellate court rejected these grounds as frivolous. *Id.*

Regardless, petitioner's allegations do not identify a double jeopardy violation. Double jeopardy under the Fifth Amendment to the Constitution provides that no person shall be subject for the same offense "to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The provision embodies three basic protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *See Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Brown v. Ohio*, 432 U.S. 161, 165 (1977); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). None of these protections is implicated in petitioner's case, as he was not acquitted, he has not been again prosecuted after conviction, and he has not been punished twice for the same offense.

In claiming a due process violation, petitioner appears to argue that the statute is unconstitutionally ambiguous in that the same set of operative facts could constitute either a first or a second degree felony. He contends that the facts as alleged by the State would support an indictment and/or conviction under either section 22.02(a) or (b)(1) of the Penal Code, and that the two sections have significantly different punishment ranges.

The indictment under which petitioner was convicted read as follows:

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, DENNIS DEAN FOREMAN, hereafter styled the Defendant, heretofore on or about NOVEMBER 29, 2009, did then and there unlawfully, intentionally, knowingly and recklessly cause serious bodily injury to LAURA FOREMAN, a MEMBER OF THE DEFENDANT'S FAMILY hereafter styled the Complainant, by SHOOTING THE COMPLAINANT with a deadly weapon, namely, A FIREARM.

Clerk's Record, at 118 (original capitalization).

A reading of the relevant statutory provisions shows that petitioner misunderstands the provisions. Section 22.02(a) states that

> (a) A person commits an offense if the person commits assault as defined in § 22.01 and the person:
>
> (1) causes serious bodily injury to another, including the person's spouse; or
>
> (2) uses or exhibits a deadly weapon during the commission of the assault.

As can be seen, a person commits an offense under subsection (a) if he causes serious bodily injury to the other person OR uses or exhibits a deadly weapon during commission of the assault. The other person can, but need not, be the person's spouse.

However, under section 22.02(b):

> (b) An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:
>
> (1) the actor uses a deadly weapon during the commission of the assault and causes serious bodily injury to a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code[.]

This subsection shows that an offense under section 22.02(a) is a second degree felony, while an offense under section 22.02(b)(1) is a first degree felony. To give rise to a first-degree felony under section 22.02(b)(1), the person must use a deadly weapon AND cause serious bodily injury to a family member. Because petitioner in the instant case assaulted his wife, used a deadly weapon and caused her serious bodily injury, he was properly charged with a

11

first degree felony under section 22.02(b)(1). The indictment tracked these three factors. The statutory scheme, as applied to petitioner, did not violate his due process rights.

Petitioner's challenges to the jury charge are likewise, and for the same reasons, procedurally defaulted and barred from consideration by this Court. Even assuming the claims were properly before the Court, they have no merit. The jury charge included the following paragraph:

> Now, if you find from the evidence beyond a reasonable doubt that on or about November 29, 2009, in Harris County, Texas, the defendant, Dennis Dean Foreman, did then and there unlawfully intentionally, knowingly or recklessly *cause serious bodily injury* to Laura Foreman, *a member of the defendant's family*, by shooting Laura Foreman *with a deadly weapon, namely, a firearm*, then you will find the defendant guilty of aggravated assault by causing serious bodily injury to a family member, as charged in the indictment.

Clerk's Record, at 219 (emphasis added). As with the indictment, this paragraph tracked all three elements necessary to set forth a first-degree offense under the statute. In reaching its verdict, the jury determined that

> We, the Jury, find the defendant, Dennis Dean Foreman, guilty of aggravated assault by causing serious bodily injury to a family member with a deadly weapon, as charged in the indictment.

*Id.*, at 224. Contrary to petitioner's allegations, no ambiguity in the charge is shown, and he fails to demonstrate either a due process or double jeopardy violation regarding the jury charge.

Petitioner is not entitled to federal habeas relief under these claims.

## V. *BRADY* VIOLATION

Petitioner next claims that the State withheld impeachment and mitigating evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Specifically, petitioner states that the State failed to subpoena complainant's medical records from the Cy-Fair Volunteer Fire Department. According to petitioner, the medical records would have shown that the size and nature of complainant's abdominal wound proved that the gun he was holding went off when complainant "bumped" into it when she attempted to run from petitioner.

In rejecting petitioner's *Brady* claim on collateral review, the state trial court made the following relevant findings of fact:

> 7. The applicant did not allege sufficient facts, which, if true, would warrant habeas relief.
>
> 8. The applicant does not demonstrate that the State failed to disclose evidence to the applicant.
>
> 9. The applicant fails to show that the evidence the State allegedly failed to disclose was material and favorable to the applicant.
>
> 10. The applicant does not demonstrate that the outcome of the trial would have been different had the evidence been disclosed to the defense.

*Ex parte Foreman*, pp. 92–93. The state trial court also made the following relevant conclusions of law:

> 6. When alleging a *Brady* violation, the applicant has the burden of showing that: (1) the prosecutor failed to disclose evidence; (2) the evidence was favorable to the applicant; and (3) the evidence was material, such that there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the trial would have been different. The applicant fails to carry his burden.

*Id.*, p. 94 (citations omitted).

As correctly stated by the state trial court, to establish a *Brady* violation, petitioner must show that the State failed to disclose favorable and material evidence, and that, had the evidence been disclosed to the defense, there is a reasonable probability that the outcome of the trial would have been different. In attempting to establish that the medical records were favorable and material to the defense, petitioner alleges that the records would have shown that his wife was accidentally shot from close range when she jumped up and tried to run away from petitioner. Petitioner's allegations of what the medical records would have shown, however, are conclusory, speculative, and unsupported by the record, and provide no basis for the granting of federal habeas relief. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."). The Fifth Circuit Court of Appeals has long held that, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

The state court denied relief on petitioner's *Brady* claim. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## VI. *EX POST FACTO* VIOLATION

Petitioner argues that the use of extraneous offense evidence during the punishment phase of his trial constituted an *ex post facto* violation. Specifically, he complains that the admission of unadjudicated offenses from 1977 and 1988 was unconstitutional because the offenses were inadmissable under evidentiary rules as they existed in 1977 and 1988.

Petitioner raised this issue in his *pro se Anders* response on direct appeal, and the intermediate state court denied the issue as frivolous. *Foreman*, at *1. Petitioner again raised the issue on collateral review, but the state trial court held that the issue was a record claim that could only be raised on appeal, not habeas. *Ex parte Foreman*, pp. 92–94.

Petitioner fails to direct this Court to any applicable authority establishing that admissibility of extraneous offense evidence is governed by the rules that were in existence at the time the extraneous offenses were committed. To the contrary, current state case law holds against petitioner's argument. *See Parson v. State*, 193 S.W.3d 116, 126 (Tex. App.—Texarkana 2006, pet. ref'd) (finding no authority for argument that unadjudicated offense evidence is inadmissible if such offense was inadmissable at time of commission); *Williams v. State*, 958 S.W.2d 844, 846 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd) (same). Petitioner's conclusory allegations do not establish that the admission of the evidence in his case constituted an *ex post facto* violation.

The state court denied relief on this claim. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal

law, or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## VII. CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 11) is **GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED AS MOOT**.

Signed at Houston, Texas, on this the 9th day of February, 2015.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE